LANGEMAN MANUFACTURING, LTD., Plaintiff,

v.

RHINO LININGS USA, INC., Ziebart International Corp., Ballweg Chevrolet, Inc., King Kollision, L.L.C. and Ziebart's Rhino Lining–Janesville, Defendants.

No. 07–cv–411–bbc.

United States District Court, W.D. Wisconsin.

May 23, 2008.

Morgan L. Copeland, Jr., Vinson & El-kins LLP, Houston, TX, Joseph D. Gray, Avelyn Marie Ross, Vinson & Elkins LLP, Austin, TX, Todd Smith, Godfrey & Kahn, S.C., Madison, WI, for Plaintiff.

Sean P. Springman, Harold V. Johnson, Timothy Patrick Lucier, Brinks Hofer Gil-son & Lione, Chicago, IL, Avelyn Marie Ross, Vinson & Elkins LLP, Austin, TX, Kenneth B. Axe, Lathrop & Clark LLP, Madison, WI, for Defendants.

## OPINION and ORDER

BARBARA B. CRABB, District Judge.

This civil case for patent infringement is before the court for construction of certain claim terms in patents owned by plaintiff Langeman Manufacturing, Ltd. Plaintiff contends that defendants Rhino Linings USA, Inc., Ziebart International Corp., Ballweg Chevrolet, Inc., King Kollision, L.L.C. and Ziebart's Rhino Lining–Janes-ville infringe three patents that it owns, U.S. Patent No. 6,284,319 (the '319 patent), U.S. Patent No. 6,875,469 (the '469 patent) and U.S. Patent No. 7,014,900 (the '900 patent). All three patents relate to edge trimming tape.

From the parties' arguments at the claim construction hearing and their pre-hearing briefs and from the patent claims, patent specification and prosecution history, I conclude that the jury would benefit from having a judicial construction of the following six terms: "a first surface and second surface between which is disposed a filament of material," "drawing the filament through the masking material," "elongated substrate," "elongated masking

material," "adhered to said substrate on a surface opposite said surface of said substrate which is removeably adhered to said vehicle surface," and "disposed between said substrate and said masking material."

In addition, defendants have requested construction of the term "elongated filament bearing masking tape." Because I conclude that their proposed construction would not help clarify the meaning of the term, which is clear on its face, I have declined to construe it. Moreover, defendants have requested that I find that the term "wherein said second masking material is substantially wider than said elongate masking material" is indefinite. I conclude that the term is not indefinite, but decline to adopt the constructions proposed by the parties, because they do not accurately define the term.

Before discussing the terms, a brief note about the changing cast of characters in this case is necessary. When plaintiff filed its complaint, it named fifteen defendants. Five of those defendants now remain in the case. Only three of the remaining defendants, Rhino Linings, USA, Inc., Ballweg Chevrolet, Inc., King Kollision, L.L.C., filed claim construction materials. The only lawyer who raised substantive arguments at the claim construction hearing represents Rhino Linings, USA, Inc., Ballweg Chevrolet, Inc. and King Kollision, L.L.C. (the "Rhino defendants") jointly.

As a result, the only meaningful engagement that has occurred with respect to claim construction is between plaintiff and the Rhino defendants. Perhaps the other defendants support these arguments, perhaps they do not. In any event, they were given an opportunity to be heard and chose not to press alternative arguments. Therefore, when I discuss "defendants'" claim construction arguments below I am referring to arguments made by the Rhino defendants and adopted implicitly by the

other defendants. However, the constructions I provide for the disputed claim terms are the operative constructions with respect to the case in full and all defendants.

## OPINION

When construing claims, the starting point is the so-called intrinsic evidence: the claims themselves, the patent specification and the prosecution history. *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed.Cir.2002). Construction of the disputed terms begins with the language of the claims. Claim terms are to receive their ordinary and customary meaning, which is the meaning that a person of ordinary skill in the art would have understood the claim term to have as of the filing date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir.2005); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir.2001). Moreover, "unless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Rexnord*, 274 F.3d at 1342.

In many instances, however, a court must proceed beyond the bare language of the claims and examine the patent specification. The specification serves an important role in arriving at the correct claim construction because it is there that the patentee provides a written description of the invention that allows a person of ordinary skill in the art to make and use the invention. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir. 1995). Although the patent specification does not broaden or narrow the invention, which is specifically laid out in the patent's claims, the specification may be used to interpret what the patent holder meant by a word or phrase in the claim. *E.I. du*

*Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed.Cir. 1988); *see also Vitronics Corp. v. Conceptronic,* 90 F.3d 1576, 1582 (Fed.Cir.1996) (when term is not specifically defined in claims, it is necessary to review specification to determine whether inventor uses term inconsistently with its ordinary meaning). Indeed, "patent law permits the patentee to choose to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term that could differ in scope from that which would be afforded by its ordinary meaning." *Rexnord,* 274 F.3d at 1342; *Vitronics Corp.,* 90 F.3d at 1582.

 After considering the claim language and the specification, a court may consider the final piece of intrinsic evidence, the patent's prosecution history. *Vitronics,* 90 F.3d at 1582. "[S]tatements made during the prosecution of a patent may affect the scope of the invention." *Rexnord,* 274 F.3d at 1343. Generally, the prosecution history is relevant if a particular interpretation of the claim was considered and specifically disclaimed during the prosecution of the patent. *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 30, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); *Vitronics,* 90 F.3d at 1582–83.

Plaintiff holds four patents that relate to filament bearing edge trimming tape; all four share a specification. The first issued patent, U.S. Patent No. 6,025,045 (the '045 patent), discloses a filament-bearing trim tape that is comprised of a filament enveloped in an "elongate substrate" that is "folded onto itself so as to form a folded edge." '045 Pat., claim 1. The '045 patent is not at issue in this lawsuit. The same specification used in the '045 is used in the three patents that plaintiff contends are infringed, because they are divisional patents of the '045 patent that issued subsequently.

### A. The '319 Patent

The '319 patent discloses a method for trimming an applied coating using a filament bearing tape. Two terms remain in dispute; both are found in claim 1 of the '319 patent, which reads as follows:

1. A method of trimming a coating applied to a surface comprising:

(a) applying to the surface to be coated a masking material comprising **a first surface and a second surface between which is disposed a filament of material** of sufficient tensile strength to cut the coating material, wherein the masking material defines at least one edge of the area to be coated;

(b) applying coating material to the surface

(c) allowing the coating material to dry or cure until it obtains sufficient strength to hold a cut edge; and

(d) **drawing the filament through the masking material** and through the coating to cut the coating.

1. *"A first surface and a second surface between which is disposed a filament of material"* (Claim 1)

**Plaintiff's construction:**

 No construction necessary.

Alternatively: A first surface and a second surface with a filament between them.

**Defendants' construction:**

The masking material is a single, folded piece of material defining first and second surfaces wherein a filament is between and enclosed by the first and second surfaces.

The parties dispute whether the tape used in the method disclosed in the '319 patent must be folded around a filament or whether the patent requires merely that a filament is present between two layers, as in a sandwich. Defendants maintain that the claims of the '319 patent are limited to

a folded-tape embodiment and that this limitation is implicit in the claim language and supported by the specification and prosecution history. Not surprisingly, plaintiff contends that this limitation is not necessary.

■■■ At the claim construction hearing, defendants asserted that plaintiff was "trying to get something other than what he invented" by pressing a broad construction. However, what was *actually* in the inventor's mind at the time the patent was procured matters very little; it is the claims themselves that define the patented invention. *Phillips*, 415 F.3d at 1312 ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' ").

Defendants maintain that the phrase "*a masking material*" found in the claim requires the first and second surface to be a unitary, single piece of material. This is not necessarily true. The plain language of the claim requires only an arrangement in which the filament is disposed between a first and second surface and the masking material is comprised of these elements. Just as "a cheese sandwich" could be made of either a first and second piece of bread or one piece of bread folded over, the phrase "a masking material" could mean a first and second piece of material or a single folded piece.

It is true that this otherwise broad claim language could be limited by unambiguous statements in the specification. However, the specification in this case offers minimal guidance. What guidance the specification does offer indicates that the preferred embodiment of the invention employs a single tape folded around a filament. It does not, however, suggest that the invention is limited to this embodiment.

In support of their argument that the specification limits the claim language to a folded-tape embodiment, defendants cite several figures and passages from a portion of the specification titled "Modes for Carrying Out the Invention." However, defendants acknowledge that the figures are representative of embodiments, and not attempts to define "the invention." Dfts.' Br., Dkt. # 103 at 9. ("The preferred embodiment and all the figures teach a single, folded substrate having a filament enclosed between first and second surfaces.")

It is telling that all of the citations provided by defendants are preceded by the statement that the figure shown is "a self-adhesive tape that is *particularly suited* to the application of the present invention." '319 Pat., col. 6, lns. 29–31 (emphasis added). In contrast, the "Disclosure of the Invention" section of the specification explains that the simplest form of the tape is *not* folded around the filament. Instead, "[i]n its simplest form, the tape comprises a substrate having at least one adhesive surface which may be removably adhered to the surface to be coated, and a filament releasably adhered to the edge of the substrate." *Id.*, col. 4, lns. 46–50. The qualifying statements in the specification make it clear that although the folded tape embodiment may be preferred, the claim language is not limited to this embodiment. *See, e.g., Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed.Cir.2004) (fact that patent describes only single embodiment does not mean claims must be construed as limited to that embodiment).

Next, when the prosecution history is considered as a whole, it provides unequivocal support for a broad reading of the claim language. When the application for the '319 patent was presented initially to the patent examiner, he rejected the claims in light of "McGinness," a prior art patent. Initially, the applicant tried to distinguish the claims of the '319 patent from this prior art by arguing that "the

tape disclosed in McGinness does not enclose a filament." Considered alone, this statement might suggest that plaintiff disclaimed a non-enclosed embodiment during prosecution, which could be a proper reason to limit the claim scope now. *Purdue Pharma L.P. v. Endo Pharmaceuticals, Inc.*, 438 F.3d 1123, 1136 (Fed.Cir.2006) ("[A] patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.").

However, the patent examiner rejected the applicant's argument on the ground that the claims of the '319 patent application were not limited to an embodiment in which the filament was enclosed within a folded tape. In response, the applicant agreed that the claim language was not so limited; the patent application was approved after the applicant instead distinguished McGinness on the ground that it did not disclose a filament "between two surfaces as expressly recited in the claims." Given this sequence of communications and the eventual issuance of the '319 patent without any additional claim language limiting the invention to an embodiment using an enclosed filament or folded tape, I conclude that there was no clear and unmistakable disavowal of claim scope by the applicant that would justify limiting the scope of claim 1 of the '319 patent in this manner. *See, e.g., SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1287 (Fed.Cir.2005) (holding that prosecution disclaimer requires patentee to clearly and unmistakably disavow certain interpretations).

I do agree with defendants in one respect: the claim term would benefit from a construction. Defendants do not suggest that plaintiff's proposed alternative construction is inaccurate for any reason other than its failure to restrict the scope of the claim to a folded tape-embodiment. Therefore, because I have concluded that

it would be improper to limit the language of claim 1 of the '319 patent to a folded-tape embodiment, I will adopt plaintiff's proposed alternative construction.

**Court's construction:**

A first surface and a second surface with a filament between them.

2. *"drawing the filament through the masking material"* (Claim 1)

**Plaintiff's construction:**

▮ No construction necessary.

Alternatively: Pulling the filament through the masking material.

**Defendants' construction:**

The filament cuts the masking material at a fold as it is pulled through the masking material.

The parties agree that the term "drawing the filament through" means "pulling the filament through" in the context of the '319 patent. However, they disagree about the effect that pulling the filament must have. Defendants believe that "pulling through" necessarily implies cutting the masking material itself. Plaintiff disagrees. The construction of this term is driven by the construction of "a first surface and a second surface between which is disposed a filament of material." Defendants argue that, in a folded-tape embodiment, the filament must cut or tear the masking material as it is removed. In a "sandwich" embodiment, the filament may be pulled through the masking material without cutting it. Because I have concluded that claim 1 of the '319 patent is not limited to a folded tape embodiment, I will adopt plaintiff's proposed construction.

**Court's construction:**

Pulling the filament through the masking material.

## B. *'469 and '900 Patents*

Six terms that are included in either the '469 patent, the '900 patent or both are in dispute. The parties do not distinguish between the '469 and '900 patents for the purpose of construing the majority of these terms. Therefore, I will consider them together, except where noted.

Like the '319 patent, the '469 patent discloses a method, not a device. Specifically, it discloses a method for applying a coating to a vehicle surface. This method includes the application of a filament-bearing masking tape that is used to trim the coating material by cutting. Although the '469 patent includes 37 separate claims, only claim 1 is independent. The disputed claim language is found in disputed claims 1, 2, 15, 23 and 37.

Claim 1 discloses:

1. A method of coating a vehicle surface with a coating material comprising:

a. applying to said vehicle surface an **elongated filament bearing masking tape** comprising:

 i. an **elongated substrate** having at least one adhesive surface which is removably adhered to said vehicle surface,

 ii. an elongated filament releasably **adhered to said substrate adjacent to an elongated edge of said substrate, which edge corresponds with and defines at least one edge of said vehicle surface** to be coated, and

 iii. an **elongated masking material adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface;**

b. applying said coating material to said vehicle surface and over said elongated edge of said substrate;

c. allowing said coating material to at least partially dry or cure; and

d. drawing said filament through said coating material to cut the coating material, wherein said filament has sufficient tensile strength to cut said partially dried or cured coating material.

Claim 2 depends from claim 1 and discloses:

2. The method of claim 1, in which the filament is **disposed between said substrate and said masking material.**

Claim 15 depends from claim 1 and discloses:

15. The method of claim 1, further comprising applying a second masking material to the **elongated masking material** of the tape prior to applying the coating material, and **wherein said second masking material is substantially wider than said elongated masking material.**

Claim 23 depends from claim 5, which in turn depends from claim 1.

Claim 5 discloses:

5. The method of claim 1, wherein said coating material is adapted to protect the vehicle surface from corrosion, moisture or abrasion.

Claim 23 discloses:

23. The method of claim 5, further comprising applying a second masking material to the **elongated masking material** of the tape prior to applying the coating material, and **wherein said second masking material is substantially wider than said elongated masking material.**

Claim 37 depends from claim 13, which depends from claim 1. Claim 13 discloses:

13. The method of claim 1, wherein:

 a. said **elongated masking material** has a second adhesive surface;

 b. a release liner covers said second adhesive surface when said **elongated**

filament bearing masking tape is applied to said vehicle surface; and

c. said method includes the further step of removing said release liner from said **elongated masking material** before said coating material is applied to said vehicle surface.

Claim 37 discloses:

37. The method of claim 13, further comprising applying a second masking material to the **elongated masking material** of the tape prior to applying the coating material, and **wherein said second masking material is substantially wider than said elongated masking material.**

The '900 patent discloses a configuration of a coated vehicle surface, in which a coating and filament-bearing masking tape are on top of the vehicle surface. Claims 1, 8, 9 and 13 are independent. The disputed claim language appears in disputed claims 1, 2, 8 and 9.

Claim 1 discloses:

1. A method of coating a vehicle surface with a coating material comprising:

a. applying to said vehicle surface an **elongated filament bearing masking tape** comprising:

i. an **elongated substrate** having at least one adhesive surface which is removably adhered to said vehicle surface,

ii. an elongated filament releasably adhered to said substrate adjacent to an elongated edge of said substrate, which edge corresponds with and defines at least one edge of said vehicle surface to be coated, and

iii. an **elongated masking material adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface;**

b. applying said coating material to said vehicle surface and over said elongated edge of said substrate;

c. allowing said coating material to at least partially dry or cure; and

d. drawing said filament through said coating material to cut the coating material, wherein said filament has sufficient tensile strength to cut said partially dried or cured coating material.

Claim 2 discloses:

2. The coated vehicle surface of claim 1, in which said filament is **disposed between said substrate and said masking material.**

Claim 8 discloses:

8. A coated vehicle surface comprising:

a. the vehicle surface;

b. an **elongated filament bearing masking tape** comprising:

i. an **elongated substrate** having at least one adhesive surface which is removably adhered to said vehicle surface,

ii. an elongated filament releasably adhered to said substrate adjacent to an elongated edge of said substrate which edge defines at least one edge of said coated vehicle surface, and

iii. an **elongated masking material adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface;**

c. a second masking material applied to said **elongated masking material** of the tape, and extending beyond said **elongated filament bearing masking tape;** and

d. a coating applied to said vehicle surface and extending over at least a portion of said filament of said mask-

ing tape, said coating having been at least partially dried or cured, wherein said filament has sufficient tensile strength to cut through the at least partially dried or cured coating material.

Claim 9 discloses:

9. A coated vehicle surface comprising:

 a. the vehicle surface;

 b. **an elongated filament bearing masking tape** comprising:

 i. an **elongated substrate** having at least one adhesive surface which is removably adhered to said vehicle surface,

 ii. an elongated filament releasably adhered to said substrate adjacent to an elongated edge of said substrate which edge defines at least one edge of said coated vehicle surface, and

 iii. an **elongated masking material adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface;**

 c. a second masking material applied to said **elongated masking material** of the tape, and extending beyond said **elongated filament bearing masking tape** and secured to said **elongated filament bearing masking tape** by an adhesive; and

 d. a coating applied to said vehicle surface and extending over at least a portion of said filament of said masking tape, said coating having been at least partially dried or cured, wherein said filament has sufficient tensile strength to cut through the at least partially dried or cured coating material.

1. *"Elongated filament bearing masking tape"* ('469 patent, claim 1; '900 patent, claims 1, 8 and 9)

**Plaintiff's construction:**

No construction necessary.

Alternatively: A tape that: (1) is long in comparison to its width; (2) includes a filament; and (3) prevents or protects a surface from being contacted with a coating material.

**Defendants' construction:**

A tape comprising the structures of limitations 1.a.i., 1.a.ii., 1.a.iii. wherein the structures are applied at the same time.

The parties have two primary disputes regarding the construction of this term. First, they disagree whether the definition should refer explicitly to elements already disclosed expressly in the claim language. Second, they disagree whether the claim language of the '469 patent should be limited to a filament-bearing tape that is applied all at the same time. (Defendants take the position that the definition of the term "elongated filament bearing masking tape" is so limited in the '469 patent, but not in the '900 patent.) The parties agree that elongated means something that is long in relation to its width.

It is odd that defendants seek to import an additional specific reference to the associated structure into the term "elongated filament bearing masking tape," because the claim language itself already explains the necessary elements of the tape. (What is even more odd is that defendants seem to acknowledge this in their brief, stating that "the claim expressly requires that the 'elongated filament bearing masking tape' is comprised of the elements of 1.a.i., 1.a.ii., 1.a.iii". Dfts.' Resp. Br., Dkt. # 127 at 12.) For example, claim 1 of the '469 patent provides that the method disclosed in the claim includes the following step:

a. applying to said vehicle surface an elongated filament bearing masking tape comprising:

 i. an **elongated substrate** having at least one adhesive surface which is removably adhered to said vehicle surface,

 ii. an elongated filament releasably adhered to said substrate adjacent to an elongated edge of said substrate, which edge corresponds with and defines at least one edge of said vehicle surface to be coated, and

 iii. an **elongated masking material** adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface . . .

Thus, there would be little advantage in replacing the easily understood term "elongated filament bearing masking tape" with defendants' proposed construction "a tape comprising the structures of limitations 1.a.i., 1.a.ii., 1.a.iii. . . ." Rather than clarifying the meaning of the term, the effect of such a construction would be to render redundant the claim language that states that the tape is comprised of elements 1.a.i, 1.a.ii. and 1.a.iii.

Support is lacking as well for defendants' proposed limitation that the tape must be applied all at the same time, and thus must be assembled before it is applied to a vehicle surface, lacks support as well. If defendants are correct, the '469 patent does not disclose a method in which the tape is assembled on the surface to be coated. Instead, it would have to be assembled in advance of placement on the surface. However, this limitation is neither required by the claim language, nor supported by the specification. Instead, the specification describes an embodiment in which the tape is assembled "in situ." '469 Pat., col. 8, lns. 3–10. ("[T]he filament may be applied to the adhesive substrate in situ, that is, after the adhesive substrate is applied to the surface to be coated, or contemporaneously with the application of the substrate to that surface."). Absent clear evidence to the contrary, it would be improper to limit the claim language in a manner that would exclude this embodiment. *See, e.g., NeoMagic Corp. v. Trident Microsystems,* 287 F.3d 1062, 1074 (Fed.Cir.2002) (quoting *Vitronics,* 90 F.3d at 1583) ("It is elementary that a claim construction that excludes the preferred embodiment 'is rarely, if ever correct and would require highly persuasive evidentiary support.' ")

Accordingly, I will reject defendants' proposed limitations and construction. The remaining question is whether construction is necessary at all. Plaintiff's proposed alternative construction is a translation of easily understood terms into other easily understood terms. A court-ordered construction is more likely to spur debate about the meaning of the new phrase than clarify anything. Therefore, I will decline to construe the term "elongated filament bearing masking tape," but I have determined that the claim language allows for assembly of the elements in place on a vehicle surface.

2. *"Elongated substrate"* ('469 patent, claim 1; '900 patent, claims 1, 8 and 9)

**Plaintiff's construction:**

■ No construction necessary.

Alternatively: A base layer that is long in comparison to its width.

**Defendants' construction:**

A long (in relation to its width) non-adhesive layer of material.

"Elongated substrate" is one of the elements included in the "elongated filament bearing masking tape" disclosed in the '469 and '900 patents. Again, there is no dispute regarding the meaning of "elongated." Moreover, the parties agree that the

substrate is a layer. The disagreement relates to whether the substrate may be adhesive. Defendants maintain that the substrate *must* be non-adhesive; plaintiff contends that the substrate *may* be non-adhesive. It is perplexing that defendants make this argument at all, given the clear indication in the patent claims and specification that the substrate is, in some instances, adhesive on one or both sides.

The claims in the '469 and '900 patents discuss explicitly an adhesive elongated substrate. For example, claim one of the '469 patent, from which all other claims of the '469 patent depend, discloses "an elongated substrate having *at least one adhesive surface* which is removably adhered to said vehicle surface." Other claims refer to the adhesive nature of the substrate as well: claim 19 of the '469 patent discloses: "the method of claim 1, wherein said elongated substrate is elected from the group consisting of a single-sided tape and a double-sided tape." The distinction between "single" and "double-sided" tape cannot be the actual number of sides the tape has, but must relate to the numbers of sides of the tape covered with adhesive. Moreover, the abstract of the patents begins by stating "The present invention provides an adhesive filament-bearing adhesive tape comprising an adhesive substrate adapted to be releasably adhered to a surface to be coated...." '469 Pat., Abstract. Therefore, it is clear that the substrate *may* be adhesive.

Finally, I agree with both parties that the plain meaning of "substrate" is a layer of material. In addition, both the claim language and the specification indicate that the "substrate" is the first or "base" layer that is applied to the vehicle surface. *See, e.g.,* '900 Pat., claim 1.b.i; '469 Pat., claim I.a.i; '469 Pat., col. 4, lns. 47–56. Therefore, I will adopt plaintiff's proposed alternative construction.

**Court's construction:**

A base layer that is long in comparison to its width.

3. *"Elongated masking material"* ('469 patent, claim 1; '900 patent, claims 1, 8 and 9)

**Plaintiff's construction:**

▮ No construction.

Alternatively: A material that: (1) is long in comparison to its width; and (2) prevents or protects a surface from being contacted with a coating material.

**Defendants' construction:**

A long (in relation to its width) material that protects an area of the vehicle surface that is not intended to be covered and that is not otherwise protected by the elongated substrate.

Like "elongated substrate," "elongated masking material" is one of the elements included in the "elongated filament bearing masking tape" disclosed in the '469 and '900 patents. Given the parties' agreement that "masking material" means "material that protects an area of surface that is not intended to be covered with a coating," and that "elongated" means something long in comparison to its width, it is surprising that a dispute remains regarding the proper construction of the term "elongated masking material."

However, defendants seek to add a limitation that the "elongated masking material" must protect a surface that "is not otherwise protected by the elongated substrate." In support of this position, defendants cite a portion of the specification that discusses using additional masking material in one of the modes of carrying out the invention. '469 Pat., col. 7, lns. 19–21. Defendants appear to be conflating the additional masking material identified in Figure 2 at 55 with the "elongated

masking material" that is itself part of the elongated filament bearing masking tape. It is true that the specification contemplates at least one embodiment in which there is additional masking material that covers an area not covered by the filament-bearing masking tape. However, it is not clear that the additional masking material discussed in this portion of the specification has anything to do with the additional masking material identified at 55 in Figure 2.

Finally, such a construction would limit the term "elongated masking material" in a manner that would produce peculiar results. If defendants are correct, then when the elongated masking material is placed on top of the elongated substrate, the portion of the material overlapping the substrate would not fall within the definition, while the portion of the material that is not overlapping would. Such a construction is unsupported by the claim language and the specification and cannot be correct.

Because I decline to impose the limitations urged by defendants, and the parties agree about the meaning of the words "elongated" and "masking material," I will adopt a construction of the term "elongated masking material" that incorporates the agreed-upon definitions.

**Court's construction:**

A material that is long in comparison to its width and protects an area of a surface that is not intended to be covered with a coating.

4. *"Adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface"* ('469 patent, claim 1; '900 patent, claims 1, 8 and 9)

**Plaintiff's construction:**

■ No construction necessary.

Alternatively: Adhered to the side of the base layer that is not the side removably adhered to the vehicle surface.

**Defendants' construction:**

The surface "opposite said surface of said substrate which is removably adhered to said vehicle surface" is defined by the elongated substrate and is the surface of the layer on the opposite side of the surface removably adhered to the vehicle surface.

At the claim construction hearing, it became apparent that the parties do not disagree about the basic meaning of this claim term. They agree the masking material is adhered to the side of the substrate that is not in contact with the vehicle surface. This appears consistent with plaintiff's construction. Defendants' concern is with plaintiff's use of the term "base layer" in place of "substrate." As discussed above, I agree that "substrate" may be properly construed as "base layer." Therefore, I will adopt plaintiff's proposed alternative construction.

**Court's construction:**

Adhered to the side of the base layer that is not the side removably adhered to the vehicle surface.

5. *"Disposed between said substrate and said masking material"* ('469 patent, claim 2; '900 patent claim 2)

**Plaintiff's construction:**

■ No construction.

Alternatively: Located between the base layer and a material that prevents or protects a surface from being in contact with a coating.

**Defendants' construction:**

The filament is directly between and in contact with the substrate and the masking material, and not in contact with vehicle surface.

The parties' dispute regarding the term "disposed between said substrate and said masking material" boils down to a disagreement about the plain meaning of the term "between." Defendants take the position that a filament that is "disposed between" the substrate and masking material must be located next to and in contact with both. Plaintiff argues that the filament may be located between those layers, but need not touch them. Neither side cites anything to support these positions, instead apparently relying on common understanding of the term "between." But defendants' proposed construction twists the plain meaning of "between" beyond recognition. Denver is "between" Madison and San Francisco on a map of the United States, yet the city limits are separated by hundreds of miles.

Therefore, I will adopt a portion of plaintiff's proposed alternative construction of the term "disposed between." I will not adopt the remainder of plaintiff's construction, because the terms substrate and masking material are used throughout the patents and are the subject of debate elsewhere.

**Court's construction:**

Located between said substrate and said masking material.

6. *"Wherein said second masking material is substantially wider than said elongated* masking material" ('469 patent, claims 15, 23 and 37)

**Plaintiff's construction:**

No construction necessary.

Alternatively: Wherein there is a second material that prevents or protects a surface from being contacted with a coating material and that second material is [considerably or significantly wider] than the first such material.

**Defendants' construction:**

Indefinite.

Alternatively: A material that protects an area of the vehicle surface that is not intended to be covered and that is at least 50% wider than the elongated masking material.

The dispute regarding the construction of the term "wherein said second masking material is substantially wider than said elongated masking material" relates to whether "substantially wider" is indefinite in the context of the '469 patent. The standard for indefiniteness is high. "If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree," the claim is sufficiently clear to avoid indefiniteness. *Exxon Research and Engineering Co. v. United States,* 265 F.3d 1371, 1375 (Fed.Cir.2001). A claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.*

The question of definiteness is tied to the question of validity. *Honeywell International, Inc. v. International Trade Commission,* 341 F.3d 1332, 1338–42 (Fed. Cir.2003) ("If the court determines that a claim is not 'amenable to construction,' then the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2."). It is for this reason that "close questions of indefiniteness" must be resolved in favor of the patent holder and claim language should be narrowed where possible to avoid indefiniteness. *Exxon,* 265 F.3d at 1375, 1380 ("we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.").

This is a close call. The additional masking material described in claims 15, 23 and 37 is described as "substantially wider" than the underlying masking tape, with little additional explanation in the claim terms or specification as to what "substantially" means in this context. It

could mean 50% wider, it could mean 150% wider. However, in spite of the potentially wide range of meanings that "substantially" might have, I find that it is not "insolubably ambiguous" as used in the '469 patent.

As the Court of Appeals for the Federal Circuit explained in *Verve v. Crane Cams*, 311 F.3d 1116, 1119–20 (Fed. Cir.2002), "It is well established that when the term 'substantially' serves reasonably to describe the subject matter so that its scope would be understood by persons in the field of the invention, and to distinguish the claimed subject matter from the prior art, it is not indefinite." In that case, the court of appeals determined that the district court erred when it found that the expression "substantially constant wall thickness" was indefinite because the patent specification and prosecution history failed to provide a clear definition of "substantially." Instead, the court of appeals stated that it was necessary to consider the "precision appropriate to the technology" and extrinsic evidence in determining whether the claim language was indefinite.

Defendants argue that "substantially wider" is indefinite because the intrinsic evidence does not provide a range of values. Defts.' Br., Dkt. # 103 at 27 ("Because there are no guidelines in the specification, the term 'substantially wider' cannot be meaningfully construed, and renders the claims in which it appears invalid for indefiniteness."). However, as *Verve* makes clear, the mere lack of "guidelines" in the specification is not enough to declare claim language indefinite. Instead, I must consider the context and scope of the claimed invention as well.

The '469 patent discloses methods for applying various coatings to a vehicle surface. As plaintiff pointed out at the claim construction hearing, the width of the additional masking material is driven by the technology used to apply the coating. If the coating is to be applied with a paintbrush, it is possible that no additional masking material would be required or the additional masking material would need to be only slightly wider than the tape itself. If the coating is applied with a spray gun, the additional masking material would need to be significantly wider in order to protect the surrounding surface from exposure.

Although I conclude that "substantially wider" is not indefinite as used in claims 15, 23 and 37 of the '469 patent, I cannot adopt either of the parties' proposed constructions. Plaintiff's proposed construction simply replaces "substantially" with the equally broad terms "considerably" or "significantly." Defendants' proposed limiting construction, that "substantially" means "more than 50%," is not supported by intrinsic or extrinsic evidence.

## ORDER

IT IS ORDERED that

1. The disputed terms in U.S. Patent No. 6,284,319 are construed as follows:

- "a first surface and second surface between which is disposed a filament of material" means "a first surface and a second surface with a filament between them"; and

- "drawing the filament through the masking material" means "pulling the filament through the masking material."

2. The disputed terms in U.S. Patent Nos. 6,875,469 and 7,014,900 are construed as follows:

- "elongated substrate" means "a base layer that is long in comparison to its width";

- "elongated masking material" means "a material that is long in comparison to its width and protects an area of a surface

that is not intended to be covered with a coating";

- "adhered to said substrate on a surface opposite said surface of said substrate which is removably adhered to said vehicle surface" means "adhered to the side of the base layer that is not the side removably adhered to the vehicle surface"; and

- "disposed between said substrate and said masking material" means "located between said substrate and said masking material."